1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILHELM KARL KIENAST, | ) Case No. EDCV 13-1661-JPR |
| Plaintiff, | ) |
| | ) |
| vs. | ) **MEMORANDUM OPINION AND ORDER** |
| | ) **AFFIRMING COMMISSIONER** |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed June 2, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and judgment is entered in her favor.

1

**II.   BACKGROUND**

Plaintiff was born on June 1, 1972.  (AR 217.)  He completed the 11th grade.  (AR 237, 328.)  He previously worked in maintenance at a speedway, doing "clean up" at his father's welding job, and in photo processing.  (AR 67, 75, 238, 278, 328.)

Plaintiff filed applications for DIB and SSI on November 7, 2011.  (AR 208, 217, 233.)  On the DIB application he alleged that he had been unable to work since November 1, 1994, because of a back injury.[1]  (AR 40, 48, 208, 217, 233, 237.)  After his applications were denied, he requested a hearing before an Administrative Law Judge.  (AR 138-39.)

A hearing was held on April 1, 2013.  (AR 38-80.)  Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (Id.)  In a written decision issued May 3, 2013, the ALJ determined that Plaintiff was not disabled.  (AR 11-24.)  On June 13, 2013, the Appeals Council denied his request for review.  (AR 1-4.)  This action followed.

**III.  STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.

---

[1]   As discussed in further detail below, Plaintiff alleged on his SSI application that he became disabled on September 1, 2001.  (AR 208.)  At the hearing Plaintiff initially confirmed he was claiming a disability onset date of November 1, 1994 (AR 40), but his lawyer then noted that it should perhaps be amended to the 2001 date (AR 41-42).

1  Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.

2  Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence

3  means such evidence as a reasonable person might accept as

4  adequate to support a conclusion.  Richardson, 402 U.S. at 401;

5  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It

6  is more than a scintilla but less than a preponderance.

7  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

8  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether

9  substantial evidence supports a finding, the reviewing court

10  "must review the administrative record as a whole, weighing both

11  the evidence that supports and the evidence that detracts from

12  the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715,

13  720 (9th Cir. 1996).  "If the evidence can reasonably support

14  either affirming or reversing," the reviewing court "may not

15  substitute its judgment" for that of the Commissioner.  Id. at

16  720-21.

17  **IV.  THE EVALUATION OF DISABILITY**

18      People are "disabled" for purposes of receiving Social

19  Security benefits if they are unable to engage in any substantial

20  gainful activity owing to a physical or mental impairment that is

21  expected to result in death or which has lasted, or is expected

22  to last, for a continuous period of at least 12 months.  42

23  U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

24  (9th Cir. 1992).

25      A.   The Five-Step Evaluation Process

26      The ALJ follows a five-step sequential evaluation process in

27  assessing whether a claimant is disabled.  20 C.F.R.

28  §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first
step, the Commissioner must determine whether the claimant is
currently engaged in substantial gainful activity; if so, the
claimant is not disabled and the claim must be denied.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not
engaged in substantial gainful activity, the second step requires
the Commissioner to determine whether the claimant has a "severe"
impairment or combination of impairments significantly limiting
his ability to do basic work activities; if not, a finding of not
disabled is made and the claim must be denied.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a
"severe" impairment or combination of impairments, the third step
requires the Commissioner to determine whether the impairment or
combination of impairments meets or equals an impairment in the
Listing of Impairments ("Listing") set forth at 20 C.F.R., Part
404, Subpart P, Appendix 1; if so, disability is conclusively
presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii).

    If the claimant's impairment or combination of impairments
does not meet or equal an impairment in the Listing, the fourth
step requires the Commissioner to determine whether the claimant
has sufficient residual functional capacity ("RFC")[2] to perform
his past work; if so, the claimant is not disabled and the claim
must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The
claimant has the burden of proving he is unable to perform past

_____

    [2]   RFC is what a claimant can do despite existing exertional
and nonexertional limitations.  §§ 404.1545, 416.945; Cooper v.
Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

1   relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets

2   that burden, a prima facie case of disability is established.

3   <u>Id.</u>  If that happens or if the claimant has no past relevant

4   work, the Commissioner then bears the burden of establishing the

5   claimant is not disabled because he can perform other substantial

6   gainful work available in the national economy.

7   §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination

8   comprises the fifth and final step in the sequential analysis.

9   §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966

10  F.2d at 1257.

11          B.   <u>The ALJ's Application of the Five-Step Process</u>

12          At step one, the ALJ found that Plaintiff had engaged in

13  substantial gainful activity from 1997 through 1999.  (AR 13.)

14  Because before and after those three years there had been periods

15  of twelve continuous months in which Plaintiff was not engaged in

16  substantial gainful activity, the ALJ nonetheless moved on to the

17  other steps of the analysis.  (<u>Id.</u>)  At step two, the ALJ

18  concluded that Plaintiff had severe impairments of "degenerative

19  disc disease; asthma; depression; and anxiety."  (AR 14.)  He

20  concluded that Plaintiff's left-knee impairment was not severe.

21  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's

22  impairments did not meet or equal a Listing.  (AR 14-15.)  At

23  step four, he found that Plaintiff had the RFC to perform "less

24  than a full range of light work"[3] (AR 15-16) and was unable to

25

26          [3]   "Light work" involves "lifting no more than 20 pounds at
    a time with frequent lifting or carrying of objects weighing up to
27  10 pounds."  §§ 404.1567(b), 416.967(b).  "Even though the weight
    lifted may be very little, a job is in this category when it
28  requires a good deal of walking or standing, or when it involves

1   perform his past relevant work (AR 22-23).  Based on the VE's

2   testimony, however, the ALJ determined that Plaintiff could

3   perform jobs existing in significant numbers in the national and

4   regional economies.  (AR 23-24.)  Thus, the ALJ found that

5   Plaintiff was not disabled.  (AR 24.)

6   **V.   DISCUSSION**

7        Plaintiff argues that the ALJ erred in finding his left-knee

8   impairment not severe and in assessing his credibility.  (J.

9   Stip. at 3-4.)

10       A.   The ALJ Did Not Err in Finding Plaintiff's Left-Knee

11            Impairment Not Severe; In Any Event, Any Error Was

12            Harmless

13            1.   Applicable law

14       At step two of the sequential evaluation process, the

15   claimant has the burden to show that he has one or more "severe"

16   medically determinable impairments that can be expected to result

17   in death or last for a continuous period of at least 12 months.

18   See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (claimant

19   bears burden at step two); Celaya v. Halter, 332 F.3d 1177, 1180

20   (9th Cir. 2003) (same); §§ 404.1508, 416.908 (defining "physical

21   or mental impairment"); §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)

22   (claimants not disabled at step two if they "do not have a severe

23   medically determinable physical or mental impairment that meets

24   the duration requirement").  A medically determinable impairment

25

26   ─────────────────────

27   sitting most of the time with some pushing and pulling of arm or
    leg controls."  §§ 404.1567(b), 416.967(b).  A person who can do

28   light work can generally also do sedentary work.  §§ 404.1567(b),
    416.967(b).

must be established by medical evidence consisting of signs, symptoms, and laboratory findings; it cannot be based solely on a claimant's own statement of his symptoms.  §§ 404.1508, 416.908; Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996); see also 42 U.S.C. § 423(d)(3).  A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques."  Ukolov, 420 F.3d at 1005 (quoting SSR 96-4p, 1996 WL 374187, at *1 n.2 (internal quotation marks omitted)); accord 20 C.F.R. §§ 404.1528(b), 416.928(b).

To establish a medically determinable impairment as "severe," moreover, the claimant must show that it "significantly limits [his] physical or mental ability to do basic work activities."[4]  §§ 404.1520(c), 416.920(c); accord §§ 404.1521(a), 416.921(a).  "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original, internal quotation marks omitted); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims.").  Thus, a court must determine whether an ALJ had substantial evidence to

---

[4]    "Basic work activities" include, among other things, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" and "[c]apacities for seeing, hearing, and speaking."  §§ 404.1521(b), 416.921(b); accord Yuckert, 482 U.S. at 141.

1  find that the record clearly established that a particular
2  impairment was not severe.  See Webb, 433 F.3d at 687.

3          2.  Analysis

4      The ALJ determined that Plaintiff's left-knee pain was not
5  severe because it did not affect him more than minimally.  (AR
6  15-16.)  The ALJ noted that the evidence showed Plaintiff
7  complained in January 2012 about having had left-knee pain for
8  one month.  (AR 14, 322.)  The ALJ also noted that a February 8,
9  2012 MRI showed some soft-tissue edema, possibly representing
10 sprain, and nonspecific myxoid degeneration[5] involving the
11 posterior horn of the medial meniscus, but there was "no
12 definite[6] meniscal or ligamentous tear."  (AR 286, 394.)
13 However, the ALJ noted that "shortly thereafter" Plaintiff's
14 treatment focused solely on his low-back pain and asthma, and he
15 had no follow-up regarding his left knee.  (AR 14.)  According to
16 the ALJ, this suggested his symptoms were not as severe as he
17 alleged.  (Id.)

18     Plaintiff argues that the ALJ erred in failing to find his
19 knee impairment "severe" because when considered in combination
20 with his lower-back impairment, it makes his claim for disability

21

22

23     [5]    "Myxoid degeneration" is "[a] degenerative process in
    which the connective tissues are replaced by a gelatinous or mucoid
24  substance."     See  Myxoid degeneration,  Biology  Online,
    http://www.biology-online.org/dictionary/Myxoid_degeneration (last
25  updated July 30, 2008); Schroeder v. Comm'r of Soc. Sec., No. 1:11-
    CV-02279, 2012 WL 7657831, at *12 (N.D. Ohio, Oct. 16, 2012)
26  ("myxoid" means "resembling mucus"), accepted by 2013 WL 821240
    (N.D. Ohio, Mar. 4, 2013).
27

28     [6]    The ALJ erroneously used the word "deficit" instead of
    "definite" in summarizing the MRI.  (Compare AR 14 with AR 286.)

8

"more realistic." (J. Stip. at 4-6.) Plaintiff first contends that the ALJ erred because his finding was based simply on the ALJ's "perception" that there was no definitive tear in his meniscus. (Id. at 5.) But Plaintiff points to nothing in the record indicating the ALJ was wrong. In fact, the diagnostic evidence cited by Plaintiff adds support to the ALJ's finding. Plaintiff cites a February 3, 2012 x-ray of his left knee, but it showed only "moderate narrowing of the medial compartment of the knee" and that "[t]he patella is intact . . . [and] [n]o displaced fractures are seen." (AR 288, 396.) It said nothing about the meniscus. Plaintiff also cites the same February 9, 2012 MRI relied on by the ALJ. (J. Stip. at 5.) Thus, none of the evidence cited by Plaintiff, or any other objective evidence in the record, calls into question the ALJ's observation that there was no definite meniscus tear.

Plaintiff also contends that the ALJ erred by finding there was no follow-up treatment to his left knee. (Id.) But essentially all the records cited by Plaintiff to refute the ALJ's observation relate to treatment in January or February – within a period of time comporting with the ALJ's observation that "shortly []after" his January knee complaints, the focus of his treatment changed to his back. (AR 14.) Further, an April 17, 2012 physical-therapy evaluation relied on by Plaintiff indicates that his complaint at the time was back pain, not knee pain, and in fact he reported that "being on his hands and knees"

9

alleviated his back pain.  (AR 310.)[7]  Plaintiff also contends
that the physical therapist noted a reduced range of motion in
the left knee (J. Stip. at 5), but the degree of reduction does
not support a severe-impairment finding.  Rather, his flexion in
both knees was "5/5" and his extension in his right knee was
"5/5" but "4/5" in his left knee.  (AR 310.)  A rating of four
out of five on knee extension is not a "significant" limitation
on Plaintiff's ability to do basic work activities.  See
§§ 404.1520(c), 416.920(c); Fricke v. Comm'r of Soc. Sec., No.
1:10-cv-01030-LJO-SMS, 2012 WL 1355664, at *3 (E.D. Cal. Apr. 8,
2012) (doctor's "4/5" rating indicated only "mildly reduced"
right-hand grip); Aragon v. Astrue, No. CV-10-0307-TUC-CKJ-DTF,
2011 WL 6936481, at *7-8 (D. Ariz. July 1, 2011) (upholding ALJ's
finding that doctor's "4/5" rating showed only "mildly reduced"
strength in extremities and "did not indicate significant
impairment"), accepted by 2012 WL 10187 (D. Ariz. Jan. 3, 2012);
cf. Branham v. Colvin, No. 12-CV-00129-JPH, 2013 WL 3830472, at
*7 (E.D. Wash., July 24, 2013) (difference between "4/5" and
"5/5" rating in knee strength not sufficiently significant to
support adverse credibility finding).

    Finally, records suggest that Plaintiff's knee pain quickly
went away on its own or with minimal treatment.  For example, a
January 4, 2012 progress note indicates that although Plaintiff
complained of "sharp" pain lasting about 90 seconds, he also said

---

[7]    In fact, Plaintiff reported throughout his treatment that
being "on his knees" helped alleviate his back pain.  (See AR 101,
250, 302, 310, 318, 341.)  Plaintiff's ability to get on his knees,
an area allegedly severely impaired, to alleviate other pain
seemingly undercuts the purported severity of his knee pain.

it "went away on its own." (AR 322.)  Although the note also
indicated that Plaintiff had crepitus,[8] as Plaintiff points out
(J. Stip. at 5), Plaintiff was nonetheless able to flex and
extend his knee, which had a full range of motion.  (AR 322.)  A
clinical note from that same day also noted crepitus but said
there was "some improvement on meds" and that Plaintiff was
awaiting physical therapy.  (AR 321.)  Less than a month later,
on February 1, 2012, Plaintiff reported that his knee pain was
"improving" and only pain management and further physical therapy
were recommended from that point forward.  (AR 315, 321, 397; see
also AR 317, 352, 357.)  On February 4, 2012, a clinical note
indicated Plaintiff's knee pain was "doing better" with physical
therapy.  (AR 316, 398.)

On March 9, 2012, slightly over two months after Plaintiff
complained of knee pain, Dr. Vicente R. Bernabe performed a
consultative examination of Plaintiff and found no indication of
a knee impairment.  (AR 295-99.)  Dr. Bernabe found that
Plaintiff's gait was normal, he was able to toe and heel walk,
and he was able to move freely and did not use any assistive
device to ambulate.  (AR 296.)  An inspection of Plaintiff's
knees was "unrevealing."  (AR 297.)  Plaintiff had normal

---

[8]   Crepitus is a "peculiar crackling, crinkly, or grating
feeling or sound [that] occurs under the skin, around the lungs, or
in the joints."  See Understanding Crepitus, MedlinePlus,
http://www.medlineplus.us/Understanding-Crepitus.html (last
updated Sept. 14, 2014).  Crepitus is caused by "gas that is
present in the soft tissues or in the areas where gas is not
supposed to be in.  The gas has penetrated and infiltrated in the
. . . areas, thus, creating the feeling or sound in the
subcutaneous tissue."  Id.

alignment and contour, there was no tenderness on palpation, and his range of motion was "full and painless."  (Id.)

Although Plaintiff maintains that his impairment was "not miraculously cured or resolved" simply because his treatment shifted to his back (J. Stip. at 5), he has pointed to nothing after his initial, short period of knee pain in January and February 2012 that shows his pain continued or that it did not resolve itself or was otherwise controlled by medication, therapy, or both.[9]  Indeed, the finding of "possible sprain" is consistent with a temporary ailment, not an enduring impairment. In any event, impairments that are effectively controlled with medication or other medical treatment are not severe.  See Kassebaum v. Comm'r of Soc. Sec., 420 F. App'x 769, 772 (9th Cir. 2011) (ALJ did not err in finding that carpal tunnel syndrome was not severe impairment because wrist operation had been successful, "at least as much as necessary to ensure that the ailment was not so severe as to interfere significantly with [claimant's] ability to work").  The ALJ did not err in noting that there existed in the record virtually nothing to support a determination of impairment severity, and such a finding cannot be based on Plaintiff's subjective symptoms alone.  See Ukolov, 420 F.3d at 1004-05.

Even if the ALJ did err in finding Plaintiff's knee pain not

---

[9]    Notably, counsel's closing argument never mentioned Plaintiff's knee pain but rather alleged disability based only on his back pain in combination with "his psychological overlay." (AR 79.)    Plaintiff has not challenged here the ALJ's findings concerning his mental health.

1  to be a severe impairment, any error was harmless because the ALJ
2  considered all of Plaintiff's functional limitations in assessing
3  his RFC. (AR 14-16.) He expressly noted Plaintiff's allegations
4  of being unable to work in part because of his knee pain,
5  including not being able to sit still or move for very long; pain
6  in bending, lifting, walking, and sitting; constant pain running
7  down his legs; and restrictions in walking and standing. (AR 16,
8  44, 46, 48, 52, 60-63.) Accordingly, any error was necessarily
9  harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)
10 (as amended) (failure to address particular impairment at step
11 two harmless if ALJ fully evaluates claimant's medical condition
12 in later steps of sequential evaluation process); see also Molina
13 v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error
14 harmless when "inconsequential to the ultimate nondisability
15 determination" (internal quotation marks omitted)).
16        Remand is not warranted on this basis.
17        B.   The ALJ Did Not Err in Assessing Plaintiff's
18             Credibility
19        Plaintiff contends that the ALJ's credibility determination
20 was not supported by substantial evidence. (J. Stip. at 8-14.)
21             1.   Applicable law
22        An ALJ's assessment of pain severity and claimant
23 credibility is entitled to "great weight." See Weetman v.
24 Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
25 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to
26 believe every allegation of disabling pain, or else disability
27 benefits would be available for the asking, a result plainly
28 contrary to 42 U.S.C. § 423(d)(5)(A)." Molina, 674 F.3d at 1112

1   (internal quotation marks omitted).

2        In evaluating a claimant's subjective symptom testimony, the
3   ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d
4   at 1035-36.  "First, the ALJ must determine whether the claimant
5   has presented objective medical evidence of an underlying
6   impairment [that] could reasonably be expected to produce the
7   pain or other symptoms alleged."  Id. at 1036 (internal quotation
8   marks omitted).  If such objective medical evidence exists, the
9   ALJ may not reject a claimant's testimony "simply because there
10  is no showing that the impairment can reasonably produce the
11  degree of symptom alleged."  Smolen, 80 F.3d at 1282 (emphasis in
12  original).  When the ALJ finds a claimant's subjective complaints
13  not credible, the ALJ must make specific findings that support
14  the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th
15  Cir. 2010).

16       Absent affirmative evidence of malingering, those findings
17  must provide "clear and convincing" reasons for rejecting the
18  claimant's testimony.  Lester, 81 F.3d at 834.  If the ALJ's
19  credibility finding is supported by substantial evidence in the
20  record, the reviewing court "may not engage in second-guessing."
21  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

22            2.  Analysis

23       The ALJ found Plaintiff's allegations of disabling pain to
24  be inconsistent with his conservative treatment, responsiveness
25  to treatment, demeanor and appearance, periods of substantial
26  gainful activity, gaps in treatment, noncompliance with
27  treatment, daily activities, and with the objective evidence of
28  record.  The ALJ thus found Plaintiff "less than fully credible."

14

(AR 17.)  Contrary to Plaintiff's contention, the ALJ provided at least one clear and convincing reason for discounting his credibility.

The ALJ based his credibility determination in part on Plaintiff's "routine and conservative" treatment and his responsiveness to treatment (AR 17-18), which is a clear and convincing reason to discount allegations of disabling impairments.  See Parra, 481 F.3d at 751 (noting that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").  Plaintiff contends that his treatment was far from conservative.  (J. Stip. at 10-11.)  As Plaintiff points out (id. at 10), the record shows that he has been prescribed strong pain medication, including Hydrocodone and Norco[10] (AR 277, 296, 302, 307-08, 310, 312-18, 320, 324, 338-41, 348-51, 355, 376, 415).  Further, Plaintiff received a lumbar epidural steroid injection in July 2012 (AR 65, 339, 346, 350) and a medial branch block[11] in October 2012 (AR 65, 71, 332, 334, 341).  Finally, although Plaintiff was turned down for surgery before the medial branch block (AR 341), he indicated at the hearing that he has since

---

[10]   Norco is the brand name for a narcotic painkiller combining hydrocodone and acetaminophen.  See Hydrocodone, MedlinePlus,   http://www.nlm.nih.gov/medlineplus/druginfo/meds/ a601006.html (last updated May 15, 2013).  Hydrocodone is used to relieve moderate to severe pain.  Id.

[11]   "Medial branch nerves are small nerves in the facet joints in the spine.  A medial branch block temporarily interrupts the pain signal being carried by the medial branch nerves that supply a specific facet joint."  Declue v. Colvin, No. 4:12CV2330 ACL, 2014 WL 2804977, at *1 n.1 (E.D. Mo. June 20, 2014).

1  been recommended for surgery and referred to a surgeon (AR 65).
2  Even though nothing in the record indicates Plaintiff eventually
3  had the surgery, Plaintiff's treatment plan nonetheless does not
4  appear to be "conservative" and therefore was not a clear and
5  convincing reason to discount his credibility.  See, e.g., Abbott
6  v. Astrue, 391 F. App'x 554, 560 (7th Cir. 2010) (characterizing
7  hydrocodone as "strong pain reliever"); Lapeirre-Gutt v. Astrue,
8  382 F. App'x 662, 664 (9th Cir. 2010) (treatment with narcotic
9  pain medication, occipital nerve blocks, trigger-point
10  injections, and cervical-fusion surgery not conservative);
11  Kephart v. Colvin, No. ED CV 13-1270-SP, 2014 WL 2557676, at *5
12  (C.D. Cal. June 6, 2014) (injections and medial branch block not
13  considered conservative treatment).[12]

14      The ALJ also discounted Plaintiff's testimony because of his
15  "generally unpersuasive appearance and demeanor while testifying
16  at the hearing." (AR 17.)  Although demeanor can be a ground for
17  discounting credibility, Thomas, 278 F.3d at 960, the ALJ failed
18  to explain what aspects of Plaintiff's appearance and demeanor
19  called into question his believability.  Accordingly, this was
20
21      [12]Plaintiff did respond to medication and, as the ALJ noted,
22  a January 2, 2013 clinic note indicated that he had not been seen
    for his back in six weeks, his back pain was improving, and he was
23  advised simply to continue his medication.  (AR 19, 417.)  Thus,
    while Plaintiff's treatment does not appear to have been
24  conservative, he did respond to his medication and treatment
    procedures.  (See AR 50-51 (Plaintiff agrees Hydrocodone "help[s
25  him] with the pain throughout the day" and said his pain "is
    better" when on that drug); see also AR 307, 321, 340, 351, 415);
26  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir.
27  2006) ("Impairments that can be controlled effectively with
    medication are not disabling for the purpose of determining
28  eligibility for SSI benefits.").

1  not a clear and convincing reason supporting the credibility

2  finding.  See Williams v. Colvin, No. CV 12-3974 FFM, 2013 WL

3  2147856, at *5 (C.D. Cal. May 16, 2013) (credibility finding not

4  supported by substantial evidence in part because "ALJ did not

5  explain what it was about [claimant's] demeanor and appearance

6  that made her less credible").

7       In any event, even if the ALJ erred in concluding that

8  Plaintiff's treatment was conservative and by relying on his

9  demeanor and appearance, the errors were harmless because he gave

10 other clear and convincing reasons for discounting Plaintiff's

11 credibility.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

12 1155, 1162 (9th Cir. 2008) (when ALJ provides specific reasons

13 for discounting Plaintiff's credibility, decision may be upheld

14 even if certain reasons were invalid as long as "remaining

15 reasoning and ultimate credibility determination" were supported

16 by substantial evidence (emphasis omitted)).  For example, the

17 ALJ noted that Plaintiff's application for DIB alleged an onset

18 date of November 1, 1994, but his application for SSI alleged an

19 onset date of September 1, 2001.  (AR 11.)  The ALJ noted that

20 Plaintiff's attorney acknowledged at the hearing that there had

21 been substantial gainful activity after the earlier onset date

22 and that he "[doesn't] have a problem with amending it to '01 at

23 this point."  (AR 11, 42.)  The ALJ noted, however, that no

24 official amendment had been made and, "giving the benefit of

25 doubt to [Plaintiff]," he considered the record since the earlier

26 alleged onset date.  (AR 11.)  Later in the decision, the ALJ

27 noted that after Plaintiff's allegedly debilitating car accident

28 in 1994, Plaintiff was able to engage in substantial gainful

activity for three years and perform other work for his father
for cash.  (AR 17, 67.)  The ALJ concluded that this "indicate[s]
that the claimant's daily activities have been, at least at
times, somewhat greater than the claimant has generally
reported."  (AR 17.)

Plaintiff contends that it was unfair for the ALJ to fault
him for this discrepancy because counsel proposed to amend his
application at the hearing to the later onset date.  (J. Stip. at
9.)  But Plaintiff misses the point: whether the application was
ultimately amended does not change the fact that Plaintiff held
himself out as disabled since November 1994, even when asked
about it at the hearing (AR 40; <u>see also</u> 48)[13] and even though he
worked for a three-year period from 1997 to 1999 (AR 227, 229,
321).  The ALJ was entitled to rely on this inconsistency to
discount Plaintiff's credibility.  <u>See Smolen</u>, 80 F.3d at 1284
(in assessing credibility, ALJ may use "ordinary techniques of
credibility evaluation," such as "prior inconsistent statements
concerning the symptoms, and other testimony by the claimant that
appears less than candid"); <u>Del Toro v. Astrue</u>, No.
08-cv-02765-REB, 2010 WL 749870, at *3-4 (D. Colo. Mar. 3, 2010)
(ALJ properly relied on discrepancy between claimant's
allegations of disabling limitations before amended onset date

---

[13]   It appears the Administration contacted Plaintiff about
the date discrepancy on December 8, 2011, after his applications
were filed, yet he did nothing at that time to amend the alleged
onset date.  (AR 243.)  Moreover, the Administration sent Plaintiff
numerous notices before and after the hearing indicating a November
1994 onset date, but he took no action to allege a later date or
otherwise amend the DIB application.  (<u>See</u> AR 81, 88, 109, 169,
233, 268.)

and evidence that claimant performed substantial gainful activity during that same period to discredit claimant and treating physician).

Relatedly, the ALJ concluded that there had been significant gaps in Plaintiff's treatment since 1994 and noted that he "only recently" began receiving treatment for his back pain, asthma, depression, and anxiety. (AR 17-18.) The ALJ noted that after Plaintiff was hospitalized for injuries sustained in a car accident, he was discharged "to home" on December 12, 1994. (AR 18, 304.) The ALJ also noted that on July 19, 1995, Plaintiff reported he was "doing well" and that he was neurologically intact. (AR 18, 326.) After that there was a 16-year gap, to November 30, 2011, before he began receiving treatment for his back pain, which was after he had filed his applications for benefits. (AR 18, 325.) This huge gap in treatment during more than a decade when Plaintiff alleged he was disabled — even using the later alleged onset date — undermines Plaintiff's allegations of debilitating pain. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ may rely on "unexplained, or inadequately explained, failure to seek treatment" in rejecting claimant's credibility); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ properly relied on three- to four-month gap in treatment in partially discrediting claimant's back-pain testimony).

Further, the ALJ faulted Plaintiff for failing to attend his physical therapy appointments, twice leading to his discharge from treatment (AR 372-73), and reasonably concluded that his noncompliance "demonstrates a possible unwillingness to do that

19

which is necessary to improve his condition and may be an indication that his symptoms are not as severe as he purports." (AR 18-19.)  Plaintiff started physical therapy in January 2012 but was discharged on March 26, 2012, for "non-compliance" because he did not return for scheduled therapy sessions.  (AR 373.)  Plaintiff resumed therapy on April 17, 2012, and his therapist recommended continuing with therapy on a more consistent basis and set compliance goals with him.  (AR 371.) Nonetheless, on August 27, 2012, Plaintiff was discharged again for "non-compliance."  (AR 372.)  The ALJ properly relied on these facts in discounting Plaintiff's credibility.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (failure to follow prescribed course of treatment relevant in assessing credibility); Burch, 400 F.3d at 681 (ALJ properly relied on lack of consistent treatment in partially discrediting claimant's testimony).

The ALJ's finding that Plaintiff's testimony conflicted with his daily activities was also proper.  The ALJ noted that Plaintiff lived by himself and could prepare small meals, clean up after himself, go to the grocery store, run errands, shop, and go places with his friends.  (AR 17, 20, 58-59, 69, 255-56.)  He could also drive, although not far.  (AR 50.)  He had adequate self-care skills, such as dressing, bathing, eating, toileting, and ensuring adequate safety precautions.  (AR 20.)  Although it is true that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001), the extent of Plaintiff's activities supports the ALJ's finding that his reports of disability were not fully

1  credible.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219,
2  1227 (9th Cir. 2009) (ALJ properly discounted claimant's
3  testimony because "she leads an active lifestyle, including
4  cleaning, cooking, walking her dogs, and driving to
5  appointments"); Molina, 674 F.3d at 1113 ("Even where
6  [claimant's] activities suggest some difficulty functioning, they
7  may be grounds for discrediting the claimant's testimony to the
8  extent that they contradict claims of a totally debilitating
9  impairment."); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir.
10  1990) (as amended) (finding that claimant's ability to "take care
11  of her personal needs, prepare easy meals, do light housework and
12  shop for some groceries . . . may be seen as inconsistent with
13  the presence of a condition which would preclude all work
14  activity") (citing Fair, 885 F.2d at 604).

15      Finally, the ALJ noted that there were no records from a
16  treating doctor reflecting any work restrictions.  (AR 21.)
17  Further, there was no medical evidence from any doctor showing
18  that Plaintiff was so functionally limited as to be disabled.
19  Dr. Bernabe concluded that Plaintiff had the functional ability
20  to perform medium work[14] (AR 295-99), and psychiatric
21  consultative examiner Dr. Thaworn Rathana-Nakintara concluded
22  that Plaintiff "would have no limitations completing a normal
23  workday or work week" (AR 330).  Moreover, at the initial level
24  of administrative review, medical consultant M. Yee also opined
25  that Plaintiff could perform essentially medium work.  (AR 81-

27      [14]  "Medium work involves lifting no more than 50 pounds at
28  a time with frequent lifting or carrying of objects weighing up to
    25 pounds."  §§ 404.1567(c), 416.967(c).

94.)  On reconsideration, medical consultant K. Wahl opined that Plaintiff could perform light work with certain limitations.  (AR 97-108.)  Plaintiff does not point to any evidence in the record undermining these opinions, instead contending only that the ALJ was not permitted to rely on the absence of objective medical evidence "alone."  (J. Stip. at 12-13.)  It is true that an ALJ may not disregard a claimant's subjective symptom testimony "solely because it is not substantiated affirmatively by objective medical evidence."  Robbins, 466 F.3d at 883; see also Bunnell, 947 F.2d at 346-47.  The ALJ may, however, use the medical evidence in the record as one factor in the evaluation. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Kennelly v. Astrue, 313 F. App'x 977, 979 (9th Cir. 2009).  Here, as explained above, the ALJ's credibility determination was supported by other clear and convincing reasons; thus, there was no error.

     This Court is limited to determining whether the ALJ properly identified reasons for discrediting Plaintiff's credibility.  Smolen, 80 F.3d at 1284.  The inconsistencies between Plaintiff's allegations on the one hand and his responsiveness to treatment, his periods of substantial gainful activity, the gaps in treatment, his noncompliance with treatment, his daily activities, and the objective evidence of record on the other were proper and sufficiently specific bases for discounting his claims of disabling symptoms, and the ALJ's reasoning was clear and convincing.  See Tommasetti v. Astrue,

22

1  533 F.3d 1035, 1039-40 (9th Cir. 2008); <u>Houghton v. Comm'r Soc.</u>
2  <u>Sec. Admin.</u>, 493 F. App'x 843, 845 (9th Cir. 2012).   Because the
3  ALJ's findings were supported by substantial evidence, this Court
4  may not engage in second-guessing.   See <u>Thomas</u>, 278 F.3d at 959.
5       Remand is not warranted on this ground.

6  **VI.   CONCLUSION**

7       Consistent with the foregoing, and pursuant to sentence four
8  of 42 U.S.C. § 405(g),[15] IT IS ORDERED that judgment be entered
9  AFFIRMING the decision of the Commissioner and dismissing this
10 action with prejudice.   IT IS FURTHER ORDERED that the Clerk
11 serve copies of this Order and the Judgment on counsel for both
12 parties.

14 DATED: September 26, 2014          _____
15                                    JEAN ROSENBLUTH
                                      U.S. Magistrate Judge

---

26      [15]    This sentence provides: "The [district] court shall have
27 power to enter, upon the pleadings and transcript of the record, a
   judgment affirming, modifying, or reversing the decision of the
28 Commissioner of Social Security, with or without remanding the
   cause for a rehearing."

23